**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE:  C. R. BARD, INC.
        PELVIC REPAIR SYSTEMS
        PRODUCT LIABILITY LITIGATION        MDL No. 2325

---------------------------------------------------------------

THIS DOCUMENT RELATES TO CIVIL
ACTION NUMBERS:

| | |
|---|---|
| Rizzo, et al. v. C. R. Bard, Inc. | 2:10-cv-01224 |
| Queen, et. Al. v. C. R. Bard, Inc. | 2:11-cv-00012 |
| Jones v. C. R. Bard, Inc. | 2:11-cv-00114 |
| Cisson, et. al. v. C. R. Bard, Inc. | 2:11-cv-00195 |

**MEMORANDUM OPINION AND ORDER**
(Plaintiffs' Motion for Leave to Take Supplemental Deposition
Of Roger Darois and the Deposition of Dan Lafever)

      Pending before the court is Plaintiffs' Motion for Leave to Take Depositions of Roger Darois and Dan LaFever (ECF Nos. 204, 177, 189, 177, respectively). Defendant has responded to the motion, and Plaintiffs have replied. Having considered the arguments of counsel and finding them to be clear, the undersigned has no need for oral argument. For the reasons that follow, the court **GRANTS, in part,** and **DENIES, in part,** Plaintiffs' motion. Plaintiffs may take the supplemental deposition of Mr. Darois, but may not depose Mr. LaFever.

## I.    __Introduction__

      Plaintiffs seek an order from the court reopening discovery beyond the March 8, 2013 deadline for the taking of two depositions. First, Plaintiffs seek the supplemental deposition of Roger Darois, Vice President of Research and Advanced Technologies for

Davol, a subsidiary of Defendant C. R. Bard. According to Plaintiffs, after the first deposition of Mr. Darois, they discovered a Material Safety Data Sheet ("MSDS") issued by the manufacturer of raw polypropylene resin used by Defendant in its mesh products, as well as two email chains in which Mr. Darois discussed the resin. Plaintiffs explain that the MSDS prohibits the use of the resin in medical applications involving permanent implantation in the human body. Contrary to this warning, Defendant used the resin in its mesh products, which were specifically intended for permanent implantation. Plaintiffs claim further that the email chains reveal Defendant's deliberate intent to conceal its improper use of the resin from the manufacturer, Phillips Sumika, for fear that Phillips Sumika would not supply the resin if it understood Defendant's intended application. Defendant, realizing that Phillips Sumika probably knew that Defendant manufactured medical devices, created a middleman, a wholly-owned subsidiary named Red Oak Sales Company, that could purchase the resin from Phillips Sumika without creating suspicion about its use. Red Oak Sales Company then used the resin in a polypropylene monofilament extrusion supplied to Defendant. Plaintiffs argue that the information revealed in the emails is highly relevant to their case. Thus, they wish to question Mr. Darois about these communications.

Plaintiffs also seek leave to depose Mr. Dan LaFever, President of Davol. Plaintiffs argue that Mr. LaFever was a party to the email communications and "his deposition is important to explore the relationship between Davol and Red Oak (the entity serving to conceal Defendant's use of the polypropylene resin from the manufacturer), his knowledge of these issue and why he would allow such nefarious conduct."

Plaintiffs argue that the email communications documenting Defendant's scheme were not produced by Defendant until November 26, 2012 and December 4 2012, leaving Plaintiffs with insufficient time to review and digest them before Mr. Darois's deposition on December 19, 2012. Plaintiffs emphasize the importance of the information and their inability to explore it during the discovery period. In response, Defendant generally opposes Plaintiffs' motion to reopen discovery on the basis that (1) Plaintiffs were in possession of all relevant evidence well in advance of the discovery deadline and (2) the taking of additional depositions would greatly prejudice Defendant given the fast-approaching trial date and other activities demanding attention in the litigation.

## II.   <u>Analysis</u>

### A. Roger Darois

In the case of Roger Darois, the court must consider two separate, but related, questions. The first question is whether Plaintiffs have shown good cause under the discovery protocol to take a supplemental deposition of Mr. Darois. The second question is whether Plaintiffs have shown good cause to reopen discovery for the purpose of completing the deposition. Obviously, if Plaintiffs cannot establish good cause under the deposition protocol, there is no need for the court to address the second question.

Under the deposition protocol contained in Pretrial Order #40, a party generally may not depose the same witness on the same subject matter more than once, absent exigent circumstances. Moreover, a party may not re-depose a witness on new subject matter unless allowed by the consent of the parties or an order of the court issued for good cause shown. Here, Plaintiffs seek to re-depose Roger Darois on new

subject matter (the email communications) without the consent of the parties; therefore, the appropriate standard for the court to apply is "good cause."

Plaintiffs contend, and Defendant's production chart seems to confirm, that the emails in question were produced on November 26, 2012 and December 4, 2012. Plaintiffs argue that the emails were contained in a document production of 560,453 pages. Thus, the sheer volume of the production prevented them from finding the emails. Plaintiffs stress that the emails were not produced as part of Mr. Darois's custodial file; rather, they were included in a production of files belonging to 41 other custodians.

While Defendant argues that two weeks was ample time for Plaintiffs to have discovered the emails for use at Mr. Darois's deposition, the undersigned disagrees. Given the size of the production and the fact that the emails were not included in Mr. Darois's custodial file, Plaintiff's failure to locate them prior to the December 19 deposition is entirely understandable. The court further finds that the information contained in the emails is relevant to Plaintiffs' claims, and Plaintiffs could not have known to ask Mr. Darois about that particular information without first seeing the emails. Accordingly, the court finds good cause for a supplemental deposition of Roger Darois on the email communications.

Having cleared the first hurdle, Plaintiffs must also show good cause to reopen discovery for the purpose of taking Mr. Darois's deposition. "Federal Rule of Civil Procedure 16(b)(4) controls the modification of a scheduling order." *McCornack v. Actavis Totowa, LLC,* 2011 WL 3047735 (S.D.W.Va. July 25, 2011). Under that rule, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "'Good cause' is shown when the moving party demonstrates that

the scheduling order deadlines cannot be met despite its diligent efforts." *Dent v. Montgomery Cty. Police Dept.,* 745 F.Supp.2d 648 (D. Md. 2010) (citing *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.,* 190 F.R.D. 372, 375 (D.Md.1999)). Thus, "the touchstone of 'good cause' under Rule 16(b) is diligence." *Marcum v. Zimmer,* 163 F.R.D. 250, 255 (S.D.W.Va.1995).

Plaintiffs concede that they received Mr. Darois's emails no later than December 4, 2012. However, they failed to move for a modification of the discovery deadline until April 15, 2013, almost 4 and ½ months later, and five weeks after expiration of discovery. Certainly, the court finds this delay somewhat troubling. On the other hand, despite a massive rolling document production by C. R. Bard that began in April 2011, the email communications apparently were first produced only three months before the discovery deadline. They were located in a custodial file that was not Mr. Darois's and in a production of more than half a million pages from 41 different custodians. Accordingly, while a four-month delay in recognizing the import of the emails would signify a lack of diligence in a typical case, the undersigned does not find that to be the situation here.[1] The transcripts of the prior status conferences and a review of the court's docket indicate that the parties have been diligent in completing discovery. The court realizes that having to arrange a deposition after close of discovery is prejudicial

---

[1] The undersigned acknowledges the argument of C. R. Bard that modifications of scheduling orders are denied more often than they are granted. Nonetheless, a review of relevant cases demonstrates that a court's assessment of "good cause" must be made on a case-by-case basis taking into account the peculiarities of each case. For this reason, the undersigned does not believe that a finding of "good cause" here is at odds with Judge Goodwin's ruling in *McCornack,* 2011 WL 3047735, the primary case upon which C. R. Bard relies. In *McCornack*, Judge Goodwin did not deny the motion to reopen discovery simply because the motion was made more than a month after the close of discovery. Instead, he emphasized that the moving party showed a lack of diligence in pursing the requested discovery given that the information, which should have triggered the discovery, had been in the moving party's possession for as long as seventeen months. Moreover, the record showed that the moving party was aware of the information and its import prior to the start of discovery. In contrast, in this case, Plaintiffs were not in possession of the emails until the latter stage of discovery and reportedly were not able to review them and digest their significance in time to make an earlier motion.

to C. R. Bard, but in view of the limited nature of the deposition and the time left before trial, the prejudice is not sufficiently severe to outweigh the good cause shown. Therefore, Plaintiffs' motion for leave to reopen discovery for the limited purpose of deposing Mr. Darois on the email communications is **GRANTED**.

### B.    Dan LaFever

In the case of Dan LaFever, who has not been previously deposed, Plaintiffs need only show good cause for reopening discovery under Fed. R. Civ. P. 16(b)(4). Nevertheless, when applying the legal framework set out above, the court does not find good cause to modify the scheduling order for the purpose of taking Mr. LaFever's deposition.

Although Plaintiffs did not have access to the emails until December 2012, Defendant's production chart reveals that Plaintiffs received the MSDS in June 2011 and were provided with evidence of Red Oak Sales Company's involvement in the production of a polypropylene monofilament extrusion by January 2012. Given Plaintiffs' complaint of manufacturing defects, discovery of the manufacturing process should have been conducted. In view of the MSDS warning, which was in Plaintiffs' possession for nearly two years before expiration of discovery, inquiry regarding the use of the resin could have been performed. It seems logical to the undersigned that as an outgrowth of that inquiry, Plaintiffs could have explored the relationship between Defendant and Red Oak Sales Company during the time frame allowed by the scheduling order; particularly, when considering that Red Oak Sales Company was a vital cog in Defendant's mesh manufacturing process. Moreover, when assessing Mr. LaFever's involvement in the emails, the court notes that he is one of seven people copied on the second email chain. Beyond his being copied on the communication,

nothing in the record suggests Mr. LaFever's direct involvement in the acquisition of the resin or the creation of Red Oak Sales Company. Certainly, nothing indicates that Mr. LaFever possesses more or different information than that known to Mr. Darois to justify two depositions on the same subject matter. As such, Plaintiffs simply have not demonstrated good cause for granting an additional modification of the scheduling order to allow the deposition of Mr. LaFever. Therefore, the court **DENIES** Plaintiffs' motion for leave to take Mr. LaFever's deposition.

The court **DIRECTS** the clerk to file a copy of this Order in the above-referenced civil actions and provide a copy to counsel of record.

**ENTERED:** May 2, 2013.

Cheryl A. Eifert
United States Magistrate Judge