**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE:      C. R. BARD, INC.,
                PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION

                                                                                        MDL No. 2187

THIS DOCUMENT RELATES TO CIVIL ACTION
NUMBERS:

| | |
|---|---|
| Cisson, et al. v. C. R. Bard, Inc. | 2:11-cv-00195 |
| Queen, et al. v. C. R. Bard, Inc. | 2:11-cv-00012 |
| Rizzo, et al. v. C. R. Bard, Inc. | 2:10-cv-01224 |
| Jones v. C. R. Bard, Inc. | 2:11-cv-00114 |

**MEMORANDUM OPINION AND ORDER
(Motions to Strike)**

Pending before the court are Defendant C. R. Bard, Inc.'s ("Bard") Motion to Strike the Untimely Rule 26 Reports of Martin King, Ph.D. and Donald Ostergard, M.D. [Docket 208] and Plaintiffs' Motion to Exclude the Untimely Supplemental Rule 26 Reports and Testing Materials of Marta Villarraga, Ph.D. and Maureen Reitman, Sc.D. and Brief in Support [Docket 234].[1] As discussed below, Bard's motion to strike [Docket 208] is **GRANTED** and the plaintiffs' motion to exclude [Docket 234] is **DENIED**.

**I.**     **Bard's Motion to Strike**

On April 1, 2013, the plaintiffs served rebuttal expert reports pursuant to Rule 26(a)(2)(D)(ii) for Dr. Martin King and Dr. Donald Ostergard. Bard seeks an order striking these reports on the ground that they are not rebuttal evidence as defined by the Federal Rules of Civil

---

[1]      Docket numbers cited herein refer to the documents in the *Cisson* case. Identical motions are also pending in *Queen* [Dockets 208, 233], *Rizzo* [Dockets 235, 260], and *Jones* [Dockets 220, 246], and this Memorandum Opinion and Order applies to those cases as well.

Procedure, but instead disclose opinions on issues for which the plaintiffs bear the burden of proof. According to Bard, these experts should have been disclosed by October 15, 2012, the court-ordered deadline for the disclosure of expert witnesses. Finally, Bard contends that the plaintiffs' failure to disclose Dr. King and Dr. Ostergard is neither substantially justified nor harmless and therefore, the plaintiffs have failed to meet their burden under Rule 37 or Rule 16 of the Federal Rules of Civil Procedure.

On the other hand, the plaintiffs argue that these are rebuttal reports which they were expressly permitted to file by April 1, 2013. They further contend that their ability to submit rebuttal expert reports does not amount to surprise or prejudice to Bard. Moreover, the plaintiffs argue that Dr. King's and Dr. Ostergard's reports were submitted for the purpose of rebutting the opinions of several of Bard's experts.

### A. *Legal Standard*

In the context of expert opinions, the Federal Rules of Civil Procedure define rebuttal evidence as "evidence . . . intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). "[A] party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *Noffsinger v. Valspar Corp.*, No. 09 C 916, 2011 WL 9795, at *6 (N.D. Ill. Jan. 3, 2011) (citing *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008)). "The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." *Braun v. Lorillard, Inc.*, 84 F.3d 230, 237 (7th Cir. 1996). Similarly, the Fourth Circuit has held that "[o]rdinarily, rebuttal evidence may be introduced only to counter new facts presented in the defendant's case in chief. . . . Permissible rebuttal

evidence also includes evidence unavailable earlier through no fault of the plaintiff." *Allen v. Prince George's Cnty., Md.*, 737 F.2d 1299, 1305 (4th Cir. 1984).

Accordingly, I will first review the expert reports and determine whether they contradict or rebut any opinions of Bard's experts or whether they simply provide additional support for the plaintiffs' case in chief. However, even if I find that Dr. King's and Dr. Ostergard's expert reports do not contradict or rebut Bard's experts' opinions, the inquiry would not end there. Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, *unless the failure was substantially justified or is harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added); *see Hoyle v. Freightliner, LLC*, 650 F.3d 321, 329 (4th Cir. 2011). The five factors I must consider to determine whether the failure was substantially justified or is harmless are:

> (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

*Hoyle*, 650 F.3d at 329 (quoting *S. States Rack & Fixture v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003)). With the above standards in mind, I will proceed to review the expert reports.

**B.** *Dr. King*

Dr. King offers two opinions: (1) that "polypropylene monofilament fibers used as permanently implantable medical devices in humans are not inert and degrade when implanted in the human body" and (2) that "degrading polypropylene products create particulate matter and the resultant degraded and released particles contribute to the inflammatory process." (King Report [Docket 208-3], at 1, 4). Dr. King does not identify which of Bard's experts or any

particular positions taken by Bard's experts that he seeks to rebut; the only statement given in his report is that the "report is provided . . . in rebuttal to positions taken by defense experts." (*Id.* at 1). The plaintiffs' response provides some insight:

> Dr. [James] Anderson, Dr. [Maureen] Reitman and Dr. [Marta Villarraga] have all provided opinions in this litigation that, alternatively, degradation of polypropylene does not happen at all, or else degradation did not happen with these Avaulta products in any of the plaintiffs in this MDL. These Bard experts further testified that the *in vivo* reaction to the Avaulta mesh observed in the pathology of the bellwether plaintiffs, was nothing more than a normal foreign body response.

(Pls.' Resp. in Opp'n to Def. Bard's Mot. to Strike the Rule 26 Reports of Martin W. King, Ph.D. & Donald R. Ostergard, M.D. [Docket 228], at 3). The plaintiffs argue that Dr. King's testimony will directly rebut these opinions.

However, a review of Dr. King's opinions reveals that they simply provide additional support for the plaintiffs' case in chief. His opinion that polypropylene is not inert and degrades *in vivo* is part of the plaintiffs' prima facie case. Several of the plaintiffs' initial experts opine on these very subjects, including Dr. Anthony Brennan, Dr. Ahmed El-Ghannam, and Dr. Julia Babensee. All three of these experts render opinions on the degradation of polypropylene *in vivo*, and Dr. Brennan and Dr. Babensee render opinions on the biocompatibility of polypropylene. Rather than actually rebutting any of Dr. Anderson's, Dr. Reitman's, or Dr. Villarraga's expert opinions, Dr. King renders the same opinions already offered by plaintiffs' initial experts. Accordingly, because Dr. King's expert opinions do not actually rebut any opinions of Bard's experts but only provide additional support for the plaintiffs' case in chief, they are not rebuttal opinions, and the plaintiffs should have disclosed Dr. King as an expert by October 15, 2012.

### C. *Dr. Ostergard*

Dr. Ostergard offers opinions related to: (1) a review of Ms. Jones's and Ms. Queen's medical history; (2) the defectiveness of the polypropylene mesh used in the Avaulta products; (3) specific causation with respect to Ms. Jones and Ms. Queen; and (4) miscellaneous attacks on Dr. Hilary Cholhan's expert report. Dr. Ostergard seeks to rebut the opinions of Dr. Vincent Lucente and Dr. Cholhan. (*See* Ostergard Report [Docket 208-4], at 12). For the most part, Dr. Ostergard does not point to any specific opinion of Dr. Lucente or Dr. Cholhan that he rebuts, but rather identifies broadly the issues of safety and efficacy of the Avaulta products and specific causation. (*See id.* at 12-22).

A review of Dr. Ostergard's opinions reveals that they simply provide additional support for the plaintiffs' case in chief. For example, his opinions regarding design defects, including the inertness, degradation, shrinkage, and manufacturing process of the polypropylene mesh are all part of the plaintiffs' prima facie case, as are his opinions regarding the plaintiffs' medical histories and specific causation. Moreover, several of the plaintiffs' initial experts, such as Dr. Brennan, Dr. El-Ghannam, Dr. Babensee, Dr. Bob Shull, and Dr. Lennox Hoyte, seek to opine on one or more of these very subjects. Again, rather than actually rebutting any of Dr. Lucente or Dr. Cholhan's expert opinions, Dr. Ostergard renders the same opinions already offered by plaintiffs' initial experts.

The final section of Dr. Ostergard's report attacks certain statements made in Dr. Cholhan's expert report. (*See id.* at 22-23). For example, he states that: (1) Dr. Cholhan provides no specific data to support certain statements; (2) some of Dr. Cholhan's statements are directly contradicted by medical literature; (3) Dr. Cholhan does not mention a possible complication with the use of certain products; and (4) Dr. Cholhan used selective literature in reaching his

conclusions. However, Dr. Ostergard never actually offers any *expert opinions* in this section, but rather takes counsel's role in cross-examination of Dr. Cholhan.

Accordingly, because Dr. Ostergard's expert opinions do not actually rebut any opinions of Bard's experts, but only provide additional support for the plaintiffs' case in chief, they are not rebuttal opinions, and the plaintiffs should have disclosed Dr. Ostergard as an expert by October 15, 2012.

### D. *Federal Rule of Civil Procedure 37(c)(1)*

I now turn to whether the plaintiffs' failure to disclose Dr. King and Dr. Ostergard in their initial expert disclosures "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In doing so, I apply the five-factor test set forth in *Southern States*. These factors are:

> (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

*Hoyle*, 650 F.3d at 329. With respect to the first factor, Bard's supposed surprise at the disclosure of new experts is unfounded. Bard argues, based on the language of Pretrial Order # 59 stating that "Plaintiffs shall serve rebuttal expert reports, if any, by April 1, 2013," that it was surprised because it expected only rebuttal reports from already-disclosed experts, not new experts. (*See* Pretrial Order # 59, MDL No. 2187 [Docket 434], at 2). Under Rule 26(a)(2)(A) and Rule 26(a)(2)(D), if Dr. King and Dr. Ostergard were proper rebuttal experts, the plaintiffs would have properly disclosed them pursuant to the deadlines set forth in Pretrial # 59. For Bard to argue that "expert reports" means reports and not witnesses makes no sense in light of the fact that Pretrial Order # 59 uses the phrase "expert reports" for *all* of the expert disclosure deadlines—including the October 15, 2012 and February 11, 2013 deadlines wherein the parties would necessarily not only serve expert reports, but also disclose their expert witnesses.

6

However, turning to the second and third factors, the trials are currently set to begin on July 8, 2013, and I am not inclined to move them. Accordingly, allowing the improper experts at this stage would likely prejudice Bard's ability to properly challenge the two experts. Under the fourth factor, the plaintiffs offer no explanation for their failure to name Dr. King or Dr. Ostergard as experts in their initial disclosures; rather, they argue only that the experts are rebuttal experts. Finally, while both experts' opinions may be important to the plaintiffs' case, they are also very likely cumulative of the opinions offered by many of the plaintiffs' other experts, and would therefore likely be subject to motions *in limine* under Federal Rule of Evidence 403, pending the court's ruling on Bard's *Daubert* motions. In sum, applying the five-factor test, I **FIND** that the plaintiffs' failure to disclose Dr. King and Dr. Ostergard in their initial expert disclosures was not substantially justified and is not harmless. Accordingly, Bard's motion is **GRANTED**.

## II.     The Plaintiffs' Motion to Exclude

On April 1, 2013, Bard produced a supplemental report by Dr. Maureen Reitman and Dr. Marta Villarraga pursuant to Rule 26(e). On April 22, 2013 and May 1, 2013, Bard produced testing results which it claims to be "underlying data upon which the Supplemental Report was based." (Def. Bard's Resp. in Opp'n to Pls.' Mot. to Exclude the Untimely Supp. Rule 26 Reports & Testing Materials of Marta Villarraga, Ph.D. & Maureen Reitman, Sc.D. & Brief in Supp. [Docket 247], at 1) [hereinafter Bard's Resp.]. The plaintiffs seek an order excluding the supplemental report and data on the grounds that they are untimely. The plaintiffs argue that Bard was provided the mesh explants and the data for testing conducted by the plaintiffs' experts in September 2012. According to the plaintiffs, Dr. Reitman and Dr. Villarraga chose not to conduct any testing or scientific analyses of these mesh explants despite Bard having them in its

possession, and the supplemental report presents a "new set of opinions based on an entirely new set of materials and information that had never previously been disclosed to Plaintiffs." (Pls.' Mot. to Exclude the Untimely Supp. Rule 26 Reports & Testing Materials of Marta Villarraga, Ph.D. & Maureen Reitman, Sc.D. & Brief in Supp. [Docket 234], at 3).

In response, Bard argues that the supplemental report "analyzed additional testing necessary to assess the adequacy of Plaintiffs' experts' methodologies and to rebut the accuracy of those experts' test results" and "could not have been performed at an earlier time." (Bard's Resp. [Docket 247], at 1). Bard further argues that the plaintiffs failed to challenge the supplemental report, but instead rescheduled the depositions of Dr. Reitman and Dr. Villarraga.

### A. *Legal Standard*

Federal Rule of Civil Procedure 26(e) governs the supplementing of expert reports. An expert report must be supplemented or corrected "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). Furthermore, even if the court finds that the supplemental report was improper, the court would still analyze whether it was substantially justified or harmless under Fed. R. Civ. P. 37(c)(1), as discussed *supra*, Section I.A.

### B. *Analysis*

Because I find that the supplemental report was substantially justified and would be harmless under Fed. R. Civ. P. 37(c)(1) and the five-factor test set forth in *Southern States*, I do not reach the issue of whether the supplemental report was proper. Again, the five factors are:

> (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

*Hoyle*, 650 F.3d at 329 (quoting *S. States*, 318 F.3d at 596). First, the supplemental report clearly is not a surprise to the plaintiffs. Beginning on February 6, 2013, and continuing into March 2013, counsel for Bard communicated with counsel for the plaintiffs regarding the testing. Although counsel for the plaintiffs did not acquiesce to the testing, it was clear that counsel had notice.

Second, even if there were some surprise, the plaintiffs had the ability to cure it—the supplemental report was served on April 1, 2013, and the plaintiffs subsequently rescheduled the depositions of Dr. Reitman and Dr. Villarraga to May 1 and May 3, 2013. The plaintiffs' *Daubert* motion was also filed pursuant to a deadline that was rescheduled to May 10, 2013. In sum, the plaintiffs were provided sufficient time to cure any surprise they may have had as a result of the supplemental report.

Third, allowing the testimony would not disrupt the trial. As just stated, the plaintiffs had the time and opportunity to depose Dr. Reitman and Dr. Villarraga and file a *Daubert* motion related to their expert opinions in the supplemental report.

Fourth, Bard has provided a plausible explanation for its failure to provide the information in the supplemental report earlier. The plaintiffs rely on their argument that Bard had the mesh explants in their possession since September 2012 and the plaintiffs' expert reports and data since October 15, 2012. However, Bard has produced e-mails between counsel between November 2012 and January 2013 wherein Bard's counsel requested additional testing data files that it had not yet received. Additionally, according to Bard, the testing protocols for one of the plaintiffs' experts were only established as late as February 11, 2013.

Finally, the supplemental report and testing is important to Bard's defense, particularly as it relates to the plaintiffs' expert opinions. Accordingly, the plaintiffs' motion is **DENIED**.[2]

### III. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's motions to strike in each of the bellwether cases (*Cisson*, 2:11-cv-00195 [Docket 208], *Queen*, 2:11-cv-00012 [Docket 208], *Rizzo*, 2:10-cv-01224 [Docket 235], and *Jones*, 2:11-cv-00114 [Docket 220]) are **GRANTED** and the plaintiffs' motions to exclude in each of the bellwether cases (*Cisson* [Docket 234], *Queen* [Docket 233], *Rizzo* [Docket 260], and *Jones* [Docket 246]) is **DENIED**. The Clerk is instructed to file a copy of this Memorandum Opinion and Order in *Cisson*, *Queen*, *Rizzo*, and *Jones*.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:       June 4, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[2] The plaintiffs' filings indicate a concern for continued filings of supplemental reports and the effect that they would have on the current trial schedule. The parties are cautioned that this ruling does not invite the parties to indiscriminately file supplemental reports. In fact, it is very likely that any supplemental report filed at this point would run afoul of Federal Rules of Civil Procedure 26 and 37.